In the Matter of the Judicial Settlement of the Accounts of JOHN S. WOODWARD and JOHN C. TUCKER, Executors, etc., of NOAH S. HUNT, Deceased.

ALICE GRAY, THOMAS M. GRAY and FREDERICK F. GRAY, Appellants, v. JOHN S. WOODWARD and JOHN C. TUCKER, Executors of the Estate of NOAH S. HUNT, Deceased, and Others, Respondents.

*Will — grand-nephews and nieces are not included in a devise to nephews and nieces.*

By his last will Noah S. Hunt, deceased, after giving a number of legacies absolutely to nephews and nieces, and to certain nephews and nieces other sums of money subject to certain life interests in favor of the testator's sisters, by the tenth clause gave and devised "unto Alice, Thomas and Frederick, the three children of my deceased niece, Mary Jane Gray, late wife of the Rev. Thomas M. Gray, each the sum of two thousand dollars, provided always, nevertheless, and it is my will, that if my sister Jane Noe shall survive me, then, in that case, at least one-half part and more, if she shall need or require it, of the interest or income of the legacies given to her said grandchildren, Alice, Thomas and Frederick Gray, shall be paid by my executors, their survivors or survivor, to my said sister Jane, or be applied to her use during the residue of the term of her natural life, and that the residue, if any, of such interest or income of such legacies, respectively, be paid to the said children of my deceased niece Mary Jane Gray, respectively, to whom the principal thereof is hereinbefore given." The twelfth clause of the will was in the following words: "All the rest, residue, and remainder of my estate and property, of every name, nature and description, including the principal sums to be invested for the payment of interest or income thereof, unto my nephews Thomas H. Corry and Samuel H. Clark, and my niece Sarah Jane Bradford, as they shall severally, by the death of either of them, fall into my said residuary estate, *I do give, devise and bequeath unto my nephews and nieces hereinbefore named*, except the said Thomas H. Corry, Samuel H. Clark and Sarah Jane Bradford, in such proportionate shares as the legacies hereinbefore given and bequeathed to them, respectively shall bear to each other."

*Held,* that the devise and bequest "unto my nephews and nieces hereinbefore named" did not include Alice Gray, the grand-niece of the testator, or Thomas and Frederick, the grand-nephews.

That it is only where grand-nephews and grand-nieces have been classed by the testator in other portions of the will with his nephews and nieces that his grand-nephews and grand-nieces have been held to take under a gift of the residue of the estate to nephews and nieces.

*Crook* v. *Whitley* (7 De G., M. & G., 490); *Falkner* v. *Butler* (Ambler's Rep., 514); *Cromer* v. *Pinckney* (3 Barb. Ch., 466); *Lewis* v. *Fisher* (2 Yeates, 196) followed.

That while the general scheme of the will might be said to indicate a *probability* that the testator meant that the Gray children should share in the benefits of the residuary clause, it was nothing more than a probability, and it could not be said with certainty that such was the intention. (BARTLETT, J.)

APPEAL by Alice Gray, Thomas Gray and Frederick Gray from a decree rendered in the New York Surrogate's Court on June 9, 1888, and especially from such part as, expressly or by implication, determined that the said appellants, the children of the testator's deceased niece, Mary Jane Gray, were not embraced within the nephews and nieces of the testator, as such words were used in the twelfth clause of his will, and were not entitled to participate in the distribution of his residuary estate.

*Charles H. Johnson,* for the appellants.

*Charles H. Knox,* for the respondents.

BARTLETT, J. :

This is an appeal from a final decree of the Surrogate's Court upon a settlement of the account of the executors of Noah S. Hunt, deceased. In order to make the decree it was necessary for the surrogate to determine what persons were entitled to share in the residuary estate of the testator under the twelfth clause of the will. He construed that clause in such a way as to exclude the children of the testator's deceased niece, Mary Jane Gray, from any participation in the distribution of the residuum ; and the only question to be determined on this appeal is, whether such construction is correct.

Under the will the principal recipients of the testator's bounty are various nephews and nieces. One nephew receives an absolute legacy of $7,000 (4th clause) ; three nieces receive absolute legacies of $7,000 each (5th clause) ; one nephew receives a life estate in

$5,000 (7th clause); another a life estate in $2,000 (9th clause); and a niece a life estate in $2,000 (8th clause). By the second clause of the will the sum of $20,000 is bequeathed to one nephew, and the sum of $80,000 in equal shares to three nephews and two nieces of the testator, subject to certain life interests in favor of the testator's sister Sarah and her husband. By the third clause the sum of $7,000 apiece is bequeathed to two other nephews and two other nieces, subject likewise to a certain life interest in behalf of the testator's sister Mary. By the sixth clause the testator bequeaths to four other nephews the sum of $5,000 each, subject to a life interest in favor of his sister Harriet. The tenth clause is similar in its general form to the second, third and sixth clauses, and is the first one in which the appellants Alice, Thomas and Frederick Gray are mentioned. The portion material to be considered on this appeal is in the following words: "I give and bequeath unto Alice, Thomas and Frederick, the three children of my deceased niece, Mary Jane Gray, late wife of the Rev. Thomas M. Gray, each the sum of $2,000, provided always, nevertheless, and it is my will that if my sister Jane Noe shall survive me, then in that case at least one-half part and more, if she shall need or require it, of the interest or income of the legacies given to her said grandchildren, Alice, Thomas and Frederick Gray, shall be paid by my executors, their survivors or survivor, to my said sister Jane, or be applied to her use during the residue of the term of her natural life, and that the residue if any of such interest or income of such legacies, respectively, be paid to the said children of my deceased niece Mary Jane Gray, respectively, to whom the principal thereof is hereinbefore given."

That part of the twelfth clause which we are called upon to construe is in the following words:

"All the rest, residue and remainder of my estates and property of every name, nature and description, including the principal sums to be invested for the payment of interest or income thereof, unto my nephews James H. Cory and Samuel H. Clark and my niece Sarah Jane Bradford, as they shall severally, by the death of either of them, fall into my said residuary estate, *I do give, devise and bequeath unto my nephews and nieces hereinbefore named*, except the said James H. Cory, Samuel H. Clark and Sarah Jane Bradford, in such proportionate shares as the legacies herein-

before given and bequeathed to them, respectively, shall bear to each other."

The question presented for decision is, whether the devise and bequest "unto my nephews and nieces hereinbefore named" includes Alice Gray, the grand-niece, of the testator, and Thomas and Frederick, grand-nephews, who are named in the tenth clause of the will and therein described as "the three children of my deceased niece Mary Jane Gray, late wife of the Rev. Thomas M. Gray."

The contention of the learned counsel for the appellant, in substance, is, that from the whole scheme of the will it is apparent that the testator regarded and intended to treat the three Gray children, representing in the mind of the testator their deceased mother, who was his niece; and that his purpose was to give them the proportionate share which, if she had been living, he would have given to her under the residuary clause. The argument is that if his niece, Mary Jane Gray, had been alive when he made his will, he would have given her $6,000 instead of giving her children $2,000 each, as he does by the tenth clause; and, of course, if he had given this niece $6,000 or any other sum under that clause, she would be entitled to share proportionately in the residuary estate. As to this argument, it may be observed that, inasmuch as there appear to have been nephews and nieces of the testator who received nothing at all under his will, it can hardly be assumed with any certainty that Mrs. Gray would have been a legatee if she had been living at the time the will was made. Cases are by no means uncommon where gifts are given to children towards whose parents the donor is by no means friendly. We do not intend to intimate that such was the fact here, but mention it only to show how purely speculative seems the assumption that the appellants are to be regarded as the representatives of their mother as legatees under the tenth clause of the will. In order to hold with the appellants that the phrase "nephews and nieces hereinbefore named" included the grand-nieces and grand-nephews, we should have to go further than any reported case to which we have been referred or which we have been able to find, has yet gone in extending the meaning of the words nephew and niece beyond their ordinary and natural signification.

Unquestionably these words, taken in the sense in which they are

generally used, mean the children of a brother or sister. (*Crook* v. *Whitley*, 7 De Gex, M. & G., 490, 494.) Mr. Jarman, whose work on Wills may be said now to have reached the rank of a legal classic, says that great-nephews and great-nieces are not included in a gift to nephews and nieces nor a great grand-nephew in a gift to grand-nephews. (2 Jarman on Wills, 152.) In *Falkner* v. *Butler* (Ambler's Rep., 514), which was decided in 1765, the master of the rolls Sir THOMAS SEWELL, held that a testamentary power to a wife to appoint among nephews and nieces could not be extended to great-nephews and great-nieces. In the case of *Cromer* v. *Pinckney* (3 Barb. Ch., 466, 475), Chancellor WALWORTH stated the general rule to be that the words nephews and nieces, in their primary and ordinary sense, mean the immediate descendants of the brothers and sisters of the person named, and do not include grand-nephews and grand-nieces or more remote descendants. It is only where grand-nephews and grand-nieces have been classed by the testator in other parts of the will with his nephews and nieces that they have been held entitled to take under a gift to nieces and nephews. Thus in the case cited the testator excepted John Cromer by name, who was only a grand-nephew, from a class of nephews and nieces to whom he gave legacies of $500 apiece. He also gave a similar legacy to those whom he described as children of his *nephew*, John Cromer, thus clearly showing, as the chancellor says, that " he did not intend to confine his bounty to the immediate descendants of his brothers and sisters in cases where such immediate descendants had died leaving issue." Another case to the same effect was decided by the vice-chancellor of England in 1870, where the testator bequeathed the proceeds of the sale of an estate to his great-nephew and to such others *of his nephews* as should be living at his own and his sister's's decease, in equal parts. Here it was held that, inasmuch as one great-nephew was classed with the testator's nephews and nieces, his other great-nephews and great-nieces were entitled to share equally in the estate. (*In re Blower's Trusts*, L. R., 11 Eq ., 97.) But in the case at bar the Gray children are nowhere referred to as great-nephews and nieces, nor are they anywhere classed with nephews and nieces in such a way as to indicate that by the use of the term nephews and nieces the testator intended to include the children of nephews and nieces.

The will in *Lewis* v. *Fisher* (2 Yeates [Penn.], 196), closely resembled that in the present case in its main features. It bequeathed legacies to various nephews and nieces, naming them; and also legacies to the children of a deceased nephew and of deceased nieces, naming such children. By the residuary clause the rest of the estate was directed to be equally divided among the testator's nephews and nieces of every discription, there being some of the half blood and some of the whole blood. The court held that the term "nephews and nieces of every description" did not include great-nephews and great-nieces. "All the nephews and nieces whom the testator has in view," said the plaintiff's counsel *arguendo*, "he particularly denominates as such in the whole of his will. But where he speaks of his great-nephews or great-nieces, he styles them the children of his nephews and nieces." And the court declared their opinion clearly to be for the plaintiff, for the reasons given by his counsel. In behalf of the appellant it is insisted that the Pennsylvania courts no longer follow this decision in *Lewis* v. *Fisher*, but an examination of the authorities cited does not show any departure from the principles upon which that decision was based.

A careful review of all the authorities to which we have been referred leads to the conclusion that the twelfth clause of this will was correctly construed by the surrogate. While the general scheme of the will may be said to indicate a *probability* that the testator meant that the Gray children should share in the benefits of the residuary clause, it is nothing more than a probability, and we cannot say, with any certainty, that such was his intention. It follows that the decree of the surrogate should be affirmed.

VAN BRUNT, P. J., and DANIELS, J., concurred in the result.

Decree of surrogate affirmed.